Jones, J.
The plaintiff in this action is seeking, by the medium, of a mandatory injunction, to compel tbe defendant railway company to receive -from the C., C., C. & St. L. Ry. Co. (generally known, as the “Big Four”) such loaided ears as arrive at Troy, consigned to plaintiff over the Big Four Road, and to switch the same upon the defendant’s track, adjoining plaintiff’s factory, and also to receive 'oars loaded on the same track by the plaintiff and to deliver the same to the Big- Four, when intended for shipment over that road, both of which it avers that the de^ fendant refuses to do. The roads of the defendant company and of the Big Four both enter Troy, and are connected by .a “Y”,but the Big Four tracks do not adjoin plaintiff’s factory, and it is only by medium of the C., II. & D. track that the plaintiff can have cars arriving or departing over the Big Four brought to its factory proper, to discharge or receive freight, the C., H. & D. having a loading track immediately adjoining the plaintiff’s factory. The plaintiff is ia manufacturing corporation, and the defendant and the Big Four company are common railway carriers.
The defendant by its answer denies that it is under any obligation,*. legal or otherwise, to switch ears upon the side-track adjoining plaintiff’s factory, which it denominates a “private side-track.” It admits that it has refused to place oars on said “private side-track” or to switch cars from the Big Four tracks to what it denominates “the private yards of plaintiff.”
It avers its readiness to place cars intended for the plaintiff’s use at reasonably convenient places in its yards and on its side-tracks.
*414 As a reason for refusing to switch cars upon the track adjoining plaintiff’s factory, it avers that plaintiff has willfully and intentionally violated and refused to comply with the rules of the defendant company in regard to “demurrage”: that is, the defendant company has a reasonable rule requiring all cars placed for loading or unloading to be so loaded or unloaded within forty-eight hours thereafter, and in default thereof that the shipper or consignee be required to pay a charge of $1 per day for each ear so detained beyond such period; which rule the plaintiff willfully and wantonly refuses to comply with. In substance, that the defendant company, in order to secure the enforcement of such “demurrage” rule, has been forced to take the action complained of by the plaintiff.
The plaintiff for reply, after admitting the existence of the rule, but denying that it has violated it, replies further in a second paragraph or paragraphs, which I .will read in full:
“The defendant, at the instance and request of the Car Service Bureau, an organization composed of the defendant and other railway companies, presented a bill for car service charges to the plaintiff amounting to about $400, and claimed th'at such charges accrued in favor of defendant because the plaintiff bad not in the past unloaded cars within the time prescribed by said car service rules. The plaintiff denied liability for a large part of said claim, ‘and the parties, after considerable effort to compromise said claim, were unable to agree upon an adjustment. The defendant then, under the direction of said bureau, demanded that plaintiff proanise and agree to pay car service claims presented by the defendant in the future, .and upon plaintiff declining to agree in -advance before ear service had actually accrued, and before it was known that any would accrue, the defendant notified plaintiff that it would not switch any oars for plaintiff and would not place ears on said side-track for plaintiff, and would not place any cars on said side-track for loading .and unloading, and said defendant did thereupon refuse to switch ears and place same on said side-track for loading and unloading, as set forth in plaintiff’s petition. The plaintiff declined to promise in advance, when requested so to do by defendant, and does now decline to promise or agree in ■advance to pay such car service claims which defendant may hereafter present, because— ■
*415 “1st. Forty-eight hours is not in any event reasonable time in Troy, andi with the track facilities afforded by defendant, within which to load its finished product from the factory, and unload 'all material and fuel consigned and shipped to plaintiff.
‘ ‘ 2d. The defendant, although' often requested by plaintiff so to do, has not provided plaintiff with sufficient track room and siding to accommodate plaintiff’s business in loading and unloading, .and by reason thereof, when a large number of ears consigned to plaintiff are placed upon said side-track by the defendant at -one time, it is physically impossible to unload all of said cars within forty-eight hours after their arrival.
“3d. The defendant, in preferring its car service charges against the plaintiff, computes the time in which said alleged car service accrued at the expiration of forty-eight hours from the time said car or cars.arrived at Troy,, and before they are placed at a convenient and suitable place for unloading, and not from the time same iare placed in convenient and suitable places for loading and unloading.
“4th. The right to charge car service can not be imposed and enforced arbitrarily, but in each case the attendant circumstances must be taken into consideration, and the charges for demurrage must, under the circumstances, be reasonable.
5th. The defendant has no lien on the goods shipped or to be shipped for ear service charges, and upon the refusal of the plain-tiff to pay such charges has no- right or power to refuse to switch~'the eax-s and refxxse to- place the same at a convenient and sxxiitable place for loading and unloading, but it is the dxxty of the defendant, if the car service charges are not .paid, to switch ears and place the same at a convenient and' suitable place for loading and unloading, and then to- depend upon civil processes for the collection of said demurrage charges.”
The pleadings are well and earefxxlly drawn, hut are neeessax*ily quite voluminous, and without fuller quotation I think the foregoing statement is sufficient for an understanding of what is involved in the case.
The case was heard upon evidence offered by both sides and now stands for decision upon its merits.
It should probably be said here that while the track adjoining plaintiff’s factory is referred to in the answer as “a private side-track, ’ ’ yet it is shown by tbe evidence to be owned- by -the *416 defendant company, .and under its control, so. far as appears from the contract by which it was constructed, and under such contract it is “private” only in so far that it is built on land belonging to the plaintiff company, 'and that the defendant company would probably have little occasion to use it, except in handling the plaintiff’s freights.
The rights of the parties are to be determined with reference to the provisions of Revised Statutes, Sections 3340 and 3341, the first of which reads as follows:
“When the track of a. company crosses, connects or intersects with the track of the same guage of another company, either company may connect the tracks of the two roads so crossing, connecting or intersecting, so as to admit the passage of cars from one road to another with facility, and .avoid the transferring of freights from said ear. And when the tracks of one company -lie contiguous to coal mines, stone quarries, manufacturing establishments, elevators, warehouses, navigable waters or side-tracks suitable for loading or unloading, it shall be the duty of such company to switch the cars of other companies ait the request of such companies, or the shippers, over and upon the tracks so. lying by such coal, mines, stone quarries, manufacturing establishments, elevators, warehouses, navigable waters or side-tracks, for the purpose of unloading or loading grain or other freight into or from such elevators, warehouses, boats upon said navigable waiters', or side-tracks, without demur-rage for forty-eight hours.”
'Section 3341 is, to- some extent, a reiteration, of these enactments, and contains further provisions as to the rates that mav be charged for such- service.
It clearly ¡appears from these sections that the Legislature intended thereby to facilitate commerce by providing that certain classes of heavy shippers, including manufacturers, should, where practicable, have ears placed at their very doors, even though the company so. placing such oars might only do. so with no further reward than the switching charges for transferring such cars to the tracks of some other company, when loaded or unloaded. lienee, the duty of the defendant in this ease would *417 not be fulfilled by merely placing oars for plaintiff’s use .at some other “reasonably convenient place’.’, along its tracks or yards—it must place the cars, in the language of the statutes, “upon the tracks so lying -by such coal mines, manufacturing establishments,” etc.—or it must show reasonable grounds for the omission to comply with the legislative requirements.
The plaintiff, being one of the classes of shippers for whose benefit the statute was enacted, and the track described in the petition being such a track as. that mentioned in the statute, the .answer of the defendant is a direct admission that it has failed to comply with the provision of a legislative regulation, to which it is subject .as a quasi public corporation, and after such admission, the burden of proof is upon it to show reasonable ground for such non-compliance-.
The reason offered is the alleged refusal of the plaintiff to comply with the .regulations of the defendant company, or rather of the Car Service Bureau, in regard to the payment of •' ‘ demurrage. ’ ’
“Demurrage” -was originally a term applied to remuneration to a ship owner for the detention of his vessel beyond .a stated period fixed for loading or unloading. Of later years, however, the usage of exacting demurrage has not been confined to maritine transactions, and it may now be regarded as well settled that a railway carrier may adopt and enforce a reasonable schedule of charges for the detention of its cars beyond a reasonable period for loading and unloading. The statute- previously referred to indirectly recognizes such established rule, by exempting cars handled in the manner therein provided, from demurrage for a period of forty-eight hours.
The answer of tifie defendant avers that its refusal to place oars on the side-track adjoining plaintiff’s factory (and in fact the whole difficulty out of which this litigation has arisen), grew out of the wanton and wilful refusal of the plaintiff to comply with the car service rules, not only, by refusing to load and unload cars within forty-eight hours, hut by refusing to pay demlurrage on cars improperly detained beyond that period.
*418 If the proof sustained this allegation plaintiff would not be entitled to the remedy and relief which it is now seeking, for the rale would be applicable, which is laid down (correctly, in iny judgment) in the 6th clanse .of the .abstract of the opinion of the court in the case of The Kentucky Wagon Mfg. Co. v. The O. & M. Ry. Co., decided by the Kentucky Court of Appeals, as reported in a .published pamphlet entitled “Legal Decisions in Car Service Cases” which counsel have furnished me. The same case is also reported in 36th Lawyers’ Reports Annotated, 850 (98th Ky., 152), but I prefer to use, for the purposes of this decision, the quotation from the abstract, as expressing tbe view I take of this point, as follows:
“Sixth. While .common carriers, members- of a car service association, have' no right to refuse to receive freight from or switch cars for a shipper because he owes to them or other members of the •association, car service fees which he refuses to pay, or because he and -other shippers have combined to resist the enforcement of the reasonable rules of the association, yet a shipper thus in default can not ask the aid of a chancellor to compel .the carrier to do that which it admits it is its duty to do, and which it is willing to do upon .a compliance on the shipper’s part with the reason-able rules of the association. The shipper having done -the first -wrong .and thus caused the wrong-doing of the carrier, the chancellor may refuse to hear him.”
T-his is -an application of the maxim- that he wh-o seeks equity must do. equity. The shipper, or consignee, can mot complain of a wrong provoked by his- own wrong-doing.
It -appearing in the case that certain bills claimed to be due under the car service rales have been presented to- plaintiff an-d payment refused, is such refusal wanton and wilful, or is it in any way such- conduct as would- deprive plaintiff of -a standing in the court -of -equity?
It appears from the -evidence that the bills in question, amounting to some $400, -contain- quite a number of items, the correctness of which is disputed by the plaintiff. I believe that it is not denied that in each instance the car may have stood on the track longer than forty-eight hours (at least I gather that from *419 the evidence) but it is claimed 'by the plaintiff that in a number of instances the ears were not placed in reasonably convenient places for unloading; that at other times the switch engine, in handling other cars, had to move those consigned to plaintiff, and that the work of loading and unloading was thereby impeded and interrupted, sometimes for several hours at a time, before the cars were replaced where plaintiff’s employes could reach tnem; in short, that in many instances the demurrage arose because the acts of the defendant company itself made it an absolute impossibility for plaintiff to load or unload the cars within forty-eight hours. It is also claimed that on some occasions the cars consigned to plaintiff arrived in such numbers, that though plaintiff had provided an unloading force sufficient in number under any ordinary circumstances to promptly unload the oars yet it was impossible for it to obtain help with the requisite experience to handle so many cargoes within forty-eight hours. The evidence is not very specific in regard to exactly wlhm, or how often these instances occurred, but I think' it'is sufficient to show that a considerable part of the ear service account was in good faith disputed by plaintiff, for reasons aforesaid;■ nor is the fact negatived by defendants’ evidence..
The rule requiring the unloading of ears within forty-eight hours is a reasonable one, but it must receive a reasonable application, and when the carrier calls upon the consignee to observe it, .the carrier must not, by bis own .acts, practically put it out of the power of the consignee so to do, and then complain of the consignee’s' forced omission, occasioned by the carrier’s own act. It is the duty of the carrier to place the car in a proper and reasonably convenient situation for unloading, arad if he fails to do so, and in consequence the consignee is prevented from unloading the cars within the time specified in the ear service rules, be can not charge or recover demurrage for delay which is caused entirely by such omission on his part. Furthermore, if the cars are originally properly and conveniently placed, but while they are being loaded or unloaded, the carrier removes them for such length of time as to materially *420 and substantially delay the work of loading and unloading, and in consequence such work is delayed for more than forty-eight hours, he can not charge or recover demurrage for such delay, directly occasioned by such act on his part, iand for which the consignee is in no way responsible. I agree in the main with the able and comprehensive charge on this subject given by Judge Yan Pelt in the case of R. R. Co. v. Fisher & Son, reported in 3 Ohio N. P. Rep., 122, 124. It seems to me that a requirement of this nature is absolutely necessary to a reasonable or fair interpretation or enforcement of the ear service rules, unless the shipper or consignee is to be left absolutely ■ at the mercy of the cai'rieiv Otherwise it would be entirely possible for the carrier to place the oar at some inaccessible point, or having originally properly placed it, to remove it within the space of an hour to such inaccessible point, and having thus made it impossible for the consignee or shipper to comply with the car service rules, proceed to inflict a penalty on him for such non- compliance.
In the case at bar I understand that the refusal of the plaintiff company to pay the bill in controversy arose, not from its resistance to the car service rules as such, but from an objection to what it claimed to be an improper construction of the rules. If the plaintiff stood in the position of simply resisting generally the right of the defendant to miake rules as to demurrage, or the general rule in question, I should hold that it had no standing in a court of equity. If the defendant had shown that the plaintiff was resisting the payment of a bill for charges, all properly imposed under the car service rules, I should make the same ruling. But the situation, in my view, is this: Here are two parties disputing (and no doubt entirely honestly on both sides) as to the liability of the second party to the first on certain contested items. As a means of enforcing payment of such disputed items, the carrier party proposes to decline fulfilling certain legal obligations which it is under toward the consignee, until the consignee pays a bill which it believes it does not owe. This can not be permitted, unless indeed the carrier had made *421 it appear by some fair preponderance of evidence, that it was entitled to payment of the entire disputed account, in which case it might well be doubted whether the consignee would be entitled to ask for any equitable relief. But no such preponderance appears, but on the contrary the evidence rather tends to establish that as to part of the bill the objections of the consignee are well founded.
The defendant has its remedy in a court of law to collect these charges (if properly made) by a civil action. It can not enforce the collection by declining to fulfill part of its duties as a common carrier, and thus compel plaintiff to pay a disputed bill, or suffer injury to its business. True, this might give rise to a multiplicity of suits, hut the same evil and in an aggravated form would also result, if the plaintiff were driven to pay these charges under protest, and then sue .for their recovery, under the provisions of Revised Statutes;, Section 3376. Moreover, such a course, if the plaintiff was compelled to- .adopt it, as the only alternative to surrendering wlhat it claim's to be its rights, would probably not secure it a resumption of the switching service, as the defendant seems to- have required as the only terms on which such service would be resumed, not only the payment of the-whole bill, disputed items and all, but a pledge from- the plaintiff to ‘ ‘ observe the oar service rules- -in the future. ’ ’
Precisely what is implied in this -last condition is-a little uncertain under the -evidence. If it means that hereafter the ear-. rier may exact payment of any claim for demurrage which it may present, and that the wagon company, as a condition of getting car service, must promise in advance to- pay all such bills, no matter how unjust, or how incorrect it may claim them to be, it is a demand which -the defendant has n-o right to make under any circumstances. On the other hand, the plaintiff would not be upheld by -this court in disputing the general right of the defendant to- make demurrage -charges, or in resisting payment of such charges in any particular instances, where properly made. But neither party can -escape a legal duty by making its performance conditional on the other party promising in ad *422 vanee to adopt -a certain course of conduct. What the panties actually do in the future, not what they mow say they will or will not do in some future contingency that miay never arise— this is what must determine their legal relations.
However, if I have correctly understood the evidence of Mr. Geiger, the manager of the plaintiff company, his position on its behalf is not that of refusing to piay any and' all such charges when properly made. This position, I think, is a tenacharges but that the Company is ready to pay all such charges When properly made. This position, I think, is a tenable one. While it may doubtless cause some inconvenience to particular case, yet the carrier company can not claim to be the sole judge and arbiter of its disputed accounts. Similar contests arise daily between other parties over disputed accounts, and are referred to the courts for adjustment when the parties finally fail to agree. Demurrage accounts stand on no higher or different footing.
Let it be understood, however, that the decision proceeds on the assumption that I have correctly understood the plaintiff’s position to be what I have just stated: that the court recognizes the right of the defendant to make and enforce reasonable rules as to demurrage on its cars, and in a proper case would refuse to interfere with such enforcement, even in the manner attempted' in the present instance-. A case might arise in future, when the plaintiff, or some .other shipper, by a disregard of a reasonable demurrage rule, might place itself beyond the right to ask for. equitable relief. But as this ease now presents itself I think tbe plaintiff is entitled to. the remedy which he seeks. As to the disputed bill the parties must be remitted to their legal rights.
While a portion of the demurrage charges claimed by the defendant miay n.ot only be proper but undisputed, yet it would seem that the defendant is seeking to enforce the payment of the entire claim, disputed items and all, as condition of switching cars to and from the plaintiff’s factory track. Neither the plaintiff’s refusal to piay the' bill as a whole, or to give an un *423 conditional and somewhat indefinite promise as to its future conduct, can be accepted as a sufficient excuse for the defendant’s failure to perform a duty enjoined upon it by law. From these conclusions, it follows in the opinion of the court, that at the commencement of this action the plaintiff was entitled to equitable relief, and should now have such mandatory injunction 'as will prohibit defendant from refusing to furnish it with car service on the track adjacent to its factory, on account of the reasons offered by the defendant in this case.
Gilbert & Shipman, for the wagon works company.
R. D. Marshall, A. McL. Marshall 'and A. F. Broomhall, for the railway company.
A decree may be framed accordingly.